[No. 26461. Department Two. April 14, 1937.]

ELLEN O'LEARY, *Appellant*, v. THOMAS BENNETT, *as Executor, et al., Respondents.*[1]

*Allen & Wilkins (Edgar R. Rombauer,* of counsel), for appellant.

*Chadwick, Chadwick & Mills, Shorett, Shorett & Taylor, H. Sylvester Garvin, Stewart Lombard,* and *John King (Earl G. Rice,* of counsel), for respondents.

HOLCOMB, J.—This appeal arises from an adverse decision in the court below upon a complaint by appellant for the construction of paragraph four of her testator's will. The testator died in Los Angeles, California,

[1]Reported in 66 P. (2d) 875.

February 14, 1933. His last will and testament was admitted to probate in the superior court for King county, Washington, on February 20, 1933. He had nominated his widow as executrix and her brother, Thomas Bennett, one of respondents, as executor. Letters testamentary issued to them and they duly qualified.

An attempted stipulation for the disposition of all the property of the testator, made during the pendency of the probate, failed, because, after several conferences, not all of the parties could be induced to agree. Hence, the proposed stipulation cannot now be considered.

However, on February 16, 1934, appellant and Thomas Bennett, her coexecutor, filed their final account and petition for distribution, reciting the probate of the will, their qualification, the fact of having filed an inventory, the subsequent exclusion of a Santa Maria savings account of over twenty thousand dollars, the fact of appellant having instituted an action for the construction of the will, which was still pending; named the legatees and set forth the specific provisions of the will, asking a distribution according to its provisions. No reservation was made in their petition for the subsequent construction of the will; but on the other hand, the court was asked to act upon the provisions of the will and make distribution accordingly. The prayer was that:

"The account herein be approved and that distribution be made as in the will provided, and that upon such distribution being made the executors be discharged from further duty and liability in the premises."

The final account and petition for distribution was regularly noted for hearing, and upon objections being filed thereto and appellant having, on April 5, 1934, filed a claim of community interest in the entire estate

as inventoried, a hearing was ·had before Honorable Wilmon Tucker, as judge *pro tempore*. In that hearing, partition was decreed and a final decree of settlement and distribution was entered on June 28, 1934, from which no appeal was perfected.

In the hearing on the final account, the record shows that appellant and James O'Leary were married in January, 1906, when he was fifty-three and she forty or forty-two years of age; that he had considerable property and she not to exceed ten thousand dollars worth. There were no surviving children. The property was probably mostly his separate estate; yet the testator declared all of his property community property.

Although she had been successful in securing the distribution of one-half of the estate and all of certain property in California, valued at more than twenty thousand dollars, she now asks to set aside paragraph four of the will as being void and contravening the rule against perpetuities. Her coexecutor resisted her claim in both proceedings. She alone appeals.

For answer to appellant's action to construe the will, respondents raised several issues: First, accord and satisfaction; that is, that the claim that appellant had secured the agreement of her coexecutor to the filing of the final account because of the stipulation, and that upon the distribution she had received all and more than the stipulation provided. Second, that, by her participation in the final account and petition for distribution and hearing thereon, and her taking as a result of that decree of distribution, she was estopped to further prosecute this action. Third, that the decree of distribution of June 28, 1934, was *res judicata*. Fourth, that appellant had by her acts, in claiming the Santa Maria account, a valuable farm in California, and her community interest, and refusal to account for cer-

tain personal property, in effect contested the will of her husband and should be barred under the language of the will providing for forfeiture of all rights by any person who should contest the will. Fifth, that if it were not possible to carry out the terms of the will which provided for a fund of one hundred thousand dollars to be accumulated, then that express term should be set aside and the ultimate purpose of the will nevertheless carried out in order to prevent the loss of the entire trust.

The trial court decided the case upon the basis of the fifth affirmative defense, finding that paragraph (a) and paragraphs (1) and (2) dependent thereon of paragraph four, were void as offending the rule against perpetuities, but that in all other respects the will was valid and the intent of the testator clear and capable of being legally performed.

Respondents open their brief with a motion to strike the opening brief of appellant, for the reason that it contains no assignment of error. The motion is denied because the error relied upon by appellant is sufficiently stated on page twelve of the brief. *Moore v. Spokane,* 88 Wash. 203, 152 Pac. 999.

The introductory paragraph of the will of the testator declared his residence to be at Seattle, King county, Washington, and that,

"All property, both real and personal, standing in the name of either myself or my wife, Ellen O'Leary, or in the name of both of us, is the community property of myself and my said beloved wife, Ellen O'Leary."

The first section provides for the payment of all lawful debts, expenses of last sickness and funeral expenses; the second bequeaths household furniture and personal effects to appellant; and the third paragraph is a bequest of $2,500 to John E. Nelligan.

The fourth paragraph, of which construction is prayed in this action, reads:

"All the rest, residue, and remainder of my estate, both real and personal, of whatsoever nature and wheresoever situated, of which I shall be seized and possessed, or to which I shall in any way be entitled at the time of my death, including any lapsed legacies, I give, devise and bequeath to the trustees hereinafter named, in trust, nevertheless, to collect and receive the rents, issues, income, interest, and profits thereof; and it is my wish that they convert the same into interest-bearing securities as soon as it is economically advantageous to the estate for them so to do. This is not to be construed, however, as imposing upon them an obligation to convert the same as hereinabove mentioned, but that they be allowed full discretion and the utmost latitude to sell the same or to execute leases for any duration of time and of any nature and description that they may deem advisable; and it is an express provision of this trust that the trustees shall not be limited to those securities and investments that are legal for the investment of trust funds in accordance with the laws of the state of Washington for the investment of trust funds, but the trustees may invest and reinvest and in all respects manage the said estate as though they were the sole owners of the same; and after deducting all proper charges incidental to the administration of the trust, to hold and pay the same as follows:

"(a) When One Hundred Thousand Dollars ($100,-000) of my estate has been converted into interest-bearing securities, these shall be set aside as follows:

"(1) Ten Thousand Dollars ($10,000) for my brother, Flurence O'Leary, of Bay St. Anne, New Brunswick, Canada; and

"(2) Ten Thousand Dollars ($10,000) for my sister, Johannah Phelan, of Chatham, New Brunswick, Canada.

And these two bequests, to Flurence O'Leary and Johannah Phelan, are subject to inheritance tax and all other state or government taxes of every nature or description, which shall be deducted from said amounts,

to be held in trust for them, and the respective incomes therefrom paid to them semi-annually; and upon their deathes, or the death of either of them, said trust shall thereupon terminate as to such decedent, and said sum of Ten Thousand Dollars ($10,000) shall be forthwith distributed to the surviving children of such decedent. If such decedent leave no surviving children, his, or her share hereunder shall pass under· the residuary clause of this will.

"(b) The rest, residue, and remainder of said trust fund shall be held in trust for my beloved wife, ELLEN O'LEARY, and the income therefrom paid to her semi-annually during her lifetime.

"(c) Upon the death of my beloved wife, the principal of said trust shall thereafter be held in trust for my nieces, Margaret Phelan Connell, Lulu Phelan Mc-Mahon, May O'Neill Savoy, and Anne Phelan Connell, and my nephew, Tom Phelan, all of Chatham, New Brunswick, Canada, and my niece, Mary O'Leary Olson, now residing at Washington, D. C.; and the net income therefrom shall be paid to them semi-annually during their respective lifetime, share and share alike. Any inheritance tax upon the property passing under this paragraph (c) shall be paid by my executors out of my general estate and not charged against the beneficiaries receiving the same.

"If said nieces or nephew, or any of them, shall be dead at the time of the death of my wife, then I direct that the portion of the trust fund herein provided for them shall be paid over to their surviving issue; and upon the death of any niece or nephew herein mentioned after the death of my wife, then the trust herein provided for such niece or nephew shall terminate and the respective portion of such trust fund held for such decedent shall be paid thereupon to his or her surviving issue."

■ ■ Although it may be doubted whether that paragraph offends the rule against perpetuities, since it is not so contraventive as the will in *In re Chappell's Estate,* 124 Wash. 128, 213 Pac. 684, where very able counsel for the parties conceded that it did not offend

against that rule, as was stated in the opinion, and has some vital differences between it and the will in *Denny v. Hyland,* 162 Wash. 68, 297 Pac. 1083, we do not think it necessary to construe this will. We think, rather, contrary to the decision of the trial judge that the principle *res judicata* did not apply to this case, that it manifestly does. *Martin v. Barger,* 62 Wash. 672, 114 Pac. 505, relied upon by the trial judge, involved radically different issues of law and fact and is not in point.

Every statutory provision was complied with in the proceedings leading up to the decree of distribution in this case. Ever since *In re Ostlund's Estate,* 57 Wash. 359, 106 Pac. 1116, 135 Am. St. 990, written by Judge Parker, who also wrote the *Martin* case, *supra,* where the will was void as to the children of the testator because they were not named or provided for, but where the steps leading up to the final settlement and distribution were all complied with, we approved a statement to the effect that

" '. . . the distribution is said to partake of the nature of a proceeding in rem, and is conclusive upon all persons having any interest in the estate.' "

We there said:

"The decree was a final adjudication by a court of competent jurisdiction, upon due process of law, as to his right and title thereto."

In *Alaska Banking & Safe Deposit Co. v. Noyes,* 64 Wash. 672, 117 Pac. 492, in a particular attempt to make certain that pronouncement, we said:

"It was the purpose of the court in that case to forever set at rest the opinion, prevailing to some extent, that a probate proceeding was something of less importance than an ordinary civil action, and that a decree formally entered could be questioned by any one although a party, where, as in that as well as in this case, it was thereafter believed to have been entered upon a mistake of fact or an erroneous conception of the law.

The remedy of a party in all such cases is by appeal, and the *Ostlund* case brings decrees entered in probate within the rules governing collateral attack in civil actions, as declared in the following decisions: *Peyton v. Peyton,* 28 Wash. 278, 68 Pac. 757; *Wick v. Rea,* 54 Wash. 424, 103 Pac. 462, and cases there cited."

In *Reagh v. Dickey,* 183 Wash. 564, 48 P. (2d) 941 (not cited by either counsel), we again positively reaffirmed that pronouncement.

"It is true the decree does not create the title in the distributees, but it is a solemn adjudication of who acquired the title of the deceased, and if rendered upon due process of law is final and conclusive upon that question." *In re Ostlund's Estate, supra.*

"The right to dispose of one's property by will is a valuable right and will be sustained when possible." *In re Peters' Estate,* 101 Wash. 572, 172 Pac. 870.

" 'If of two constructions of an instrument one will give effect to all the objects which it is evident were sought to be accomplished by its execution, and another will not, the one which will should be adopted, if the language used can be so interpreted as to allow such construction.' " *In re Peters' Estate, supra.*

The above mentioned case of *In re Peters' Estate* is not cited by respondents. Instead, *In re James' Estate,* 245 Pa. 118, 91 Atl. 511, somewhat alike, is cited.

There is no necessity for a construction of paragraph four of this will, because it has, in effect, been construed by appellant herself in her final account and petition for distribution.

This case is controlled by our own cases rather than by outside cases cited by both parties.

Although the reason given by the trial judge was incorrect, the result was right, and the judgment is affirmed.

STEINERT, C. J., TOLMAN, BEALS, and ROBINSON, JJ., concur.