[No. 2820-1.    Division One.    January 6, 1975.]

THE STATE OF WASHINGTON, *Appellant*, v. THOMAS R. SMITH, *Respondent*.

*Christopher T. Bayley, Prosecuting Attorney*, and *Ronald H. Clark, Deputy*, for appellant.

*Moschetto & Alfieri* and *Steve Paul Moen*, for respondent.

HOROWITZ, J.—Plaintiff State of Washington appeals an order dismissing an information charging defendant with three counts of bribery. The findings summarize the facts as follows.

About April 12, 1971, a grand jury commenced an investigation of the allegations of bribery and corruption in the Seattle Police Department in the 1960's. Mr. Evan L.

Schwab, special deputy prosecuting attorney assigned exclusively to the grand jury, telephoned defendant at the Seattle Police Department's Burglary Division. Mr. Schwab stated "I see by your statement that you're willing to testify before the Grand Jury," or words to that effect. Mr. Schwab then asked defendant to appear in his office for questioning regarding his conduct as a policeman, such appearance to take place prior to his grand jury appearance. Defendant declined, advising Mr. Schwab that he wished to make his statements before the grand jury.

In early May 1971 defendant received a subpoena to appear before the King County Grand Jury on May 14. In response to the subpoena, defendant did appear on that day "fully anticipating an extensive inquiry during which he would receive immunity from prosecution." Finding of fact No. 3. Not being trained in the law, defendant took legal counsel into the grand jury room with him. Defendant Smith was called to the stand and was duly sworn as a witness. In response to Mr. Schwab's questions he stated his name and address. Mr. Schwab then stated:

> Mr. Smith, you've been subpoenaed to appear before the 1971 King County Grand Jury which was convened by the King County Superior Court. The King County Grand Jury was convened to investigate, among other things, evidence of possible bribery and corrupt conditions in King County. You have the right at this time to be represented by an attorney. I see that you are so represented, and I would ask him to identify himself for the record.

He further stated:

> We wish to further advise you that you have the right to remain silent and refuse to answer any question if the answer may tend to incriminate you, and anything you do say may be used against you in a court of law.

Mr. Schwab then asked defendant to state his occupation. Defendant's counsel instructed defendant to refuse to answer "on the grounds it may tend to incriminate him." Defendant then refused to answer "on the grounds it may

tend to incriminate me." He was then asked if he was a lieutenant in the Seattle Police Department; he refused to answer on the same grounds. He was then asked if he was married, and he again refused to answer upon the same grounds.

Subsequently defendant filed a motion to dismiss the information on the ground that:

Prosecution of this defendant for bribery is specially prohibited by Washington Laws 1909 Chapter 249, Section 39 (RCW 10.52.090) and is violative of the defendant's rights under said statute and under Washington Laws 1909 Chapter 249, Section 78 (RCW 9.18.080) and Article II, Section 30 of the Washington State Constitution.

The court granted the motion on the grounds set forth in conclusion of law No. 3 next stated. The State's appeal followed. Although appellant's brief contains no formal assignment of error, we pass on the contentions raised under the rationale of *Bruckart v. Cook*, 30 Wn.2d 4, 190 P.2d 725 (1948), *In re Estate of Whittier*, 26 Wn.2d 833, 176 P.2d 281 (1947), and *Moore v. Spokane*, 88 Wash. 203, 152 P. 999 (1915).

Conclusion of law No. 3 reads:

By virtue of his appearance and being sworn before the King County Grand Jury on May 14, 1971, under the circumstances shown herein, defendant acquired immunity from prosecution for bribery or related offenses in accordance with Wash. Laws 1909, Ch. 249, Sec. 39 (RCW 10.52.090).

■ The controlling questions presented are: First, did defendant acquire immunity from prosecution under RCW 9.18.080 and RCW 10.52.090 upon being subpoenaed, sworn to testify before the King County Grand Jury, testifying to his name and address, and then, upon invoking his privilege against self-incrimination, being excused from further questioning; and secondly, did the conduct of the deputy prosecutor in erroneously, but in good faith, informing defendant he had a right to invoke his privilege against self-incrimination, defendant thereupon doing so in reasonable

reliance upon the admonition given, followed by defendant being excused from further questioning, deny defendant fundamental fairness or estop the State from contending defendant was subject to prosecution in the instant case? We hold no immunity exists and reverse.

RCW 9.18.080 provides:

> Every person offending against any of the provisions of law relating to bribery or corruption shall be a competent witness against another so offending and shall not be excused from giving testimony tending to criminate himself.

RCW 10.52.090 provides:

> In every case where it is provided in this act that a witness shall not be excused from giving testimony tending to criminate himself, no person shall be excused from testifying or producing any papers or documents on the ground that his testimony may tend to criminate or subject him to a penalty or forfeiture; but he shall not be prosecuted or subjected to a penalty or forfeiture for or on account of any action, matter or thing concerning which he shall so testify, except for perjury or offering false evidence committed in such testimony.

These statutes apply to interrogations before a grand jury. *State v. Carroll*, 83 Wn.2d 109, 515 P.2d 1299 (1973).

■ One who claims statutory immunity from prosecution must come within the terms of the statute. The immunity from prosecution granted by RCW 10.52.090 in effect is in exchange for testimony that may tend to incriminate the witness or subject him to a penalty or forfeiture. As *State v. Carroll, supra* at 111 points outs, "the grant of immunity [must] be coextensive with the scope of the privilege against self-incrimination." The purpose of the exchange is to facilitate the prosecution of crime, not to grant immunity. *Carchidi v. State*, 187 Wis. 438, 204 N.W. 473 (1925). The immunity so granted is " 'transactional immunity' as distinguished from 'use and derivative use immunity.' " *State v. Carroll, supra* at 113.

Prior to *Carroll, State v. Whalen*, 108 Wash. 287, 183 P. 130 (1919), held if testimony was given by a witness volun-

tarily, no immunity occurred. Incriminating testimony would be deemed involuntarily given if the witness, having claimed his Fifth Amendment privilege before testifying, was nevertheless compelled to testify, thereupon giving incriminating testimony. In the absence of such compulsion, the giving of incriminating testimony would not render the statute applicable. *United States v. Orsinger*, 428 F.2d 1105 (D.C. Cir. 1970); *Schultz v. Yeager*, 293 F. Supp. 794 (D.N.J. 1967); *United States v. Cayias*, 200 F. Supp. 790 (S.D. Fla. 1961); *People ex rel. Bekoris v. Truesdell*, 259 App. Div. 1091, 21 N.Y.S.2d 7 (1940); 8 J. Wigmore, *Evidence* § 2282, at 519 (McNaughton rev. ed. 1961). *See generally* 21 Am. Jur. 2d *Criminal Law* §§ 147, 148, 151 (1965); 22 C.J.S. *Criminal Law* § 46(2) (1961).

*Carroll* did not decide whether immunity would arise if no incriminating testimony was given. In *Carroll* defendants actually testified. The issue determined was whether the testimony given was compelled testimony in the absence of a prior claim of privilege by the witness. The court held no such claim was necessary and overruled *State v. Whalen, supra,* so far as it held a witness was "required to claim the privilege against self-incrimination as a condition precedent to the transactional immunity provided [him] under RCW 9.18.080 and RCW 10.52.090." *State v. Carroll, supra* at 116.

The issue here, however, is whether immunity arises when testimony, which if given would have been compelled testimony, is withheld pursuant to a claim of privilege against self-incrimination, the witness being thereupon excused from testifying. Defendant cites no decision holding immunity arises. Were we to hold immunity arises in the absence of testimony given, it would be necessary to read out of RCW 10.52.090 the portion reading:

> [The witness] shall not be prosecuted or subjected to a penalty or forfeiture for or on account of any action, matter or thing *concerning which he shall so testify,* except for perjury or offering false evidence committed in such testimony.

(Italics ours.) Moreover, to so hold would thwart the statute's purpose to exchange immunity for compelled testimony. If immunity is to arise, compelled testimony must be given. If the claim of privilege is respected, immunity will not arise. *United States v. Orsinger, supra; Schultz v. Yeager, supra; United States v. Cayias, supra; State ex rel. Rizzo v. County Court,* 32 Wis. 2d 642, 146 N.W.2d 499 (1966). *See generally* 8 J. Wigmore, *Evidence* § 2282, particularly at page 519 (McNaughton rev. ed. 1961); 21 Am. Jur. 2d *Criminal Law* §§ 147, 148, 151 (1965); 22 C.J.S. *Criminal Law* § 46(2) (1961); *People ex rel. Bekoris v. Truesdell, supra.* The principle is discussed in 8 J. Wigmore, *Evidence* § 2282, at 512-13 (McNaughton rev. ed. 1961):

> 2. *Sufficiency of disclosure.* The question will also arise whether the witness has in his testimony made a disclosure such as entitles him to the immunity. This may depend somewhat upon the phrasing of the particular statute. But, so far as the general principle is not affected by particular statutory wordings, it should be necessary and sufficient (a) that the witness *states something,* not merely *denies* knowledge of any facts, (b) that his statement is of facts *asked for* by the opponent, not of facts *volunteered* or irrelevantly interjected and (c) that the disclosure *tend to incriminate* the witness as to the crime prosecution for which ultimately puts the immunity in issue. As to this last point: Although the statutes literally require only that the disclosure *concern* the subject matter of the crime, it can be inferred that the legislatures do not intend to grant immunity in exchange for testimony which is not privileged.

(Footnote omitted.) Similarly, it is stated in *State ex rel. Rizzo v. County Court, supra* at 646-48:

> Statutory procedures which allow testimony to be compelled by court order and which grant immunity from prosecution to the witness so testifying are based on the theory of *quid pro quo.* In exchange for information that a prosecutor could not otherwise obtain, the witness receives immunity from prosecution for the crimes to which his testimony relates. The statute merely creates

an immunity coextensive with the constitutional privilege against self-incrimination. . . .

. . .

Thus basically a witness will be immune from prosecution as to those offenses about which he testified if (1) he was actually compelled to testify under the statute, and (2) the testimony that he divulged while under compulsion is part of or led to evidence which supports the prosecution from which he claims immunity.

If a witness merely testifies to his name and address (here known to the State causing the subpoena to be issued), such testimony would not suffice to confer immunity. *People ex rel. Bekoris v. Truesdell, supra.*

■ The remaining question is whether the deputy prosecutor's conduct constitutes fundamental unfairness or creates an estoppel against the State to contend the transactional immunity does not exist. Finding of fact No. 5 reads:

> The legal admonitions given by the Special Deputy Prosecuting Attorney to Lt. Smith during his appearance before the King County Grand Jury were incorrect insofar as they indicated that Lt. Smith had a right to refuse to answer incriminating questions and that Lt. Smith's answers could be used against him in a court of law. There is nothing to indicate that the Special Deputy Prosecuting Attorney acted in bad faith in communicating the erroneous legal admonitions to Lt. Smith, and such error in instructing the witness was the result of a mistaken interpretation of the law by the Special Deputy Prosecuting Attorney and was not intentionally misleading. Lt. Smith reasonably relied upon the legal admonitions of the Special Deputy Prosecuting Attorney in invoking his privilege against self-incrimination in response to three questions.

An erroneous admonition by a government official, based on a mistaken interpretation of the law given in good faith to one represented by counsel then present, the latter advising him concerning what he should do in response to the admonition, does not create an estoppel against the State from invoking criminal sanctions otherwise applicable. *Rust v. Western Wash. State College,* 11 Wn. App. 410, 523

P.2d 204 (1974). *Rust* quotes from and follows *State v. Northwest Magnesite Co*, 28 Wn.2d 1, 24, 182 P.2d 643 (1947). The court there stated:

> It is . . . unfortunate that the commissioner . . . expressed his opinion . . . that the statutes in force were not applicable . . . However, such expression of opinion as to the law, the facts being equally well known to both parties, cannot preclude the state from asserting the true effect of the statutes . . . *Turner v. Spokane County*, 150 Wash. 524, 273 Pac. 959.

*Rust v. Western Wash. State College, supra* at 418. Finding of fact No. 5 does not negate the fact apparent from the record that defendant relied also upon the advice of his own counsel then in the grand jury room to advise him. There is no finding defendant justifiably relied upon any representation of fact, promise or commitment theretofore made by the deputy prosecutor to which the State refuses to adhere. In the absence of any of these essential elements, no estoppel arises against the State.

Defendant relies on *State ex rel. Shannon v. Sponburgh*, 66 Wn.2d 135, 401 P.2d 635 (1965). The opinion in that case includes the following at pages 143-44:

> The conduct of government should always be scrupulously just in dealing with its citizens; and where a public official, acting within his authority and with knowledge of the pertinent facts, has made a commitment and the party to whom it was made has acted to his detriment in reliance on that commitment, the official should not be permitted to revoke that commitment.

The deputy prosecutor undoubtedly expected to question the witness subpoenaed for that purpose. No doubt defendant intended to give incriminating testimony before the grand jury believing that testimony would give him immunity from prosecution. Instead defendant, following the deputy prosecutor's admonition given in error but in good faith and following his counsel's advice, refused to testify. The deputy prosecutor then excused defendant from further questioning. In so doing, the deputy prosecutor dishon-

522

ored no promise or commitment to continue to question defendant after he had obtained a court order compelling the latter to testify or, for that matter, assuming he could do so, to arrange for immunity notwithstanding the questioning was incomplete. Defendant, his counsel, and the deputy prosecutor were familiar with all the facts. The State and defendant, each represented by counsel, dealt at arm's length. They were charged with knowledge of "the true effect of the statutes . . ." *State v. Northwest Magnesite Co., supra.* Each party equally took the risk the true effect of the statutes might be misunderstood. The necessary elements of estoppel against the State do not exist. There are no additional facts on which to base a claim of fundamental unfairness against the State.

Reversed.

JAMES and CALLOW, JJ., concur.

Petition for rehearing denied February 4, 1975.

Review denied by Supreme Court April 29, 1975.